CLERK'S COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
at Santa Fe, NM

OCT -1 1999

ROBERT M. MARCH, Clerk
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MICHAEL B. FOOTE and JOHN
D'ANTONIO, JR., both individually
and as former general partners of
DIAMOND PARTNERSHIP, and as
officers of TOUCH 'EM ALL LTD.,
d/b/a ALBUQUERQUE
SPORTSPLEX,

        Plaintiffs,

vs.

THE COUNTY OF BERNALILLO;
BOARD OF COUNTY
COMMISSIONERS OF
BERNALILLO COUNTY, all
individually and in their official
capacities as County Commissioners
for Bernalillo County; TIM
EICHENBERG, individually and
officially; and the ALBUQUERQUE
METROPOLITAN ARROYO FLOOD
CONTROL AUTHORITY,

        Defendants.

(Consolidated)
Nos. 99-0658 PK/LCS
99-0662 PK/LCS

---

## MEMORANDUM OPINION AND ORDER

---

THIS MATTER comes on for consideration of the Motion to Dimiss filed

August 20, 1999 (doc. 18), by Defendants Bernalillo County and the Board of

County Commissioners of Bernalillo County, individually and in their official

3\

capacities as County Commissioners for Bernalillo County ("County Defendants"). The court, being advised fully in the premises, finds that the federal claims in this case are not ripe, thus the court lacks subject matter jurisdiction, and declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the case will be remanded to state district court.

## Background

In 1987, Plaintiffs purchased a recreational complex as part of a partnership and operated it through a corporation. Amended Complant filed June 28, 1999 at 7, ¶ 23. On land zoned A-1, the complex operated with a special use permit "for the life of the use." Id. at 6, ¶¶ 16, 17. Plaintiffs contend that various actions taken by Defendants subsequent to their purchase of the complex, and in response to proposed modifications of it, resulted in a worthless special use permit and forced a distress sale of the property. They contend that Sandia Pueblo (Sandia Business Development Corp.) agreed to purchase the complex for $2.3 million and retain them to manage it for an estimated fee of $500,000 over five years. Id. at 18, ¶¶ 51-52. However, because of a variety of actions by the Defendants, Sandia Pueblo only paid $1.75 million, without any management contract. Id. at 31, ¶ 100. Though hardly clear from the amended complaint, "Plaintiffs are still operating the Sportsplex as Touch 'Em All, Ltd., at the subject site and contemplate having to move it to a new location by the year 2001."

Plaintiff's Response to "Motion to Dismiss and Supporting Memorandum" filed Aug. 20, 1999 at 14 (doc. 19).

According to Plaintiffs, the decline in value of their property was attributable to several actions by the Defendants. Defendant Albuquerque Metropolitan Arroyo Flood Control Authority (AMAFCA) insisted upon berms around the property and expanding the existing flood control easement to encompass the entire property. Amended Complaint at 24-25, ¶¶ 75, 79. Additionally, Plaintiffs were charged with six misdemeanor zoning violations that ultimately were settled. Id. at 28, ¶ 92. Plaintiffs contend that the charges were brought in bad faith and for a variety of impermissible reasons with the objective of eliminating the special use permit and the economic viability of the sports complex. Id. at 30-31, ¶ 97. According to the Plaintiffs, they incurred $32,000 in legal fees and were forced to enter into a settlement agreement which limited the duration of their special use. Id. at 31-32, ¶ 101. Finally, Plaintiffs contend that an arbitrary and capricious light pollution ordinance directed at the sports complex was passed by the Bernalillo County Commission and it completely eliminated the value of their special use permit. Id. at 32-33, ¶ 104. Plaintiffs seek compensatory and punitive damages on a variety of theories: substantive due process (count I); Fifth Amendment takings and inverse condemnation under New Mexico law (count II); interference with property interests under federal constitutional law, 42 U.S.C. § 1983 (count III); malicious

abuse of process under New Mexico law (count IV). They also seek a declaratory judgment that the light pollution ordinance is invalid as a violation of their "fundamental constitutional property rights" (count V), and costs and attorney's fees pursuant to 42 U.S.C. § 1988 (count VI).

## Discussion

The County Defendants have moved to dismiss this action on a variety of grounds. They first argue that the individual Plaintiffs are not the real parties in interest under Fed. R. Civ. P. 17; all of the claims except count IV are based upon an alleged taking of the property owned by the Diamond Partnership and managed by Touch 'Em All Ltd., who are not parties to the suit. Although Plaintiffs allege that they are "former general partners," Amended Complaint at 4, ¶ 9, and contend in their response memorandum that they have been assigned the partnership's right to sue, the latter contention is not contained in the amended complaint.

The court need not address the standing issue (nor the other grounds urged) given the County Defendants' argument that the court lacks subject matter jurisdiction because the federal takings claim is not ripe. In deciding a Fed. R. Civ. P. 12(b)(1) motion to dismiss, the court takes the allegations in the complaint as true; here, the operative jurisdictional facts are undisputed; and the subject matter jurisdiction inquiry is a legal one. See Holt v. United States, 46

F.3d 1000, 1002 (10th Cir. 1995). Even assuming that the Plaintiffs could amend the amended complaint to remedy the standing problems, it is apparent that the federal takings claim is central to the resolution of this case. The Supreme Court has insisted upon a final, reviewable decision by local authorities constituting the alleged taking and then resort to available state inversé condemnation procedures. See Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 193-95 (1985). Without addressing the former, the latter requirement has not been met here; indeed, count II of the complaint contains not only a federal takings claim, but the requisite claim for compensation under New Mexico's inverse condemnation law. Given the potential for claim and issue preclusion, it is not surprising that Plaintiffs brought both federal and state claims in one state-court action, even if the federal claim is not yet ripe. See Wilkinson v. Pitkin County Board of County Comm'rs, 142 F.3d 1319, 1322-24 (10th Cir. 1998).

"[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Williamson, 473 U.S. at 195. In a long line of cases, the Tenth Circuit has required that the statutory inverse condemnation procedure be used first. See SK Finance SA v. La Plata County, 126 F.3d 1272, 1275-76 (10th Cir. 1997); Bateman v. City of West Bountiful, 89 F.3d 704, 708-09 (10th Cir. 1996); Rocky Mountain Materials v. Board of County Comm'rs, 972 F.2d 309, 310 (10th Cir. 1992); J.B. Ranch, Inc.

v. Grand County, 958 F.2d 306, 308-09 (10th Cir. 1992); Miller v. Campbell County, 945 F.2d 348, 352 (10th Cir. 1991). Moreover, where a federal substantive due process or equal protection claim is based upon the same or similar operative facts as the takings claim, those claims are also subject to the ripeness requirement. See Bateman, 89 F.3d at 709; Landmark Land Co. v. Buchanan, 874 F.2d 717, 722 (10th Cir. 1989); Dakota Ridge Joint Venture v. City of Boulder, No. 97-1330, 1998 WL 704694, at *3 (10th Cir. Aug. 21, 1998) (unpublished). While it is true that a federal procedural due process claim in certain circumstances may not be subject to the ripeness requirement, see Landmark Land Co., 874 F.2d at 723, the federal claims in the complaint are substantive due process (count I), Fifth Amendment takings (count II), and "intereference with property interests," specifically failure to provide compensation or an adequate post-deprivation remedy (count III).

New Mexico provides an inverse condemnation procedure. See N.M. Stat. Ann. § 42A-1-29 (Michie 1994 Repl. Pamp.). Plaintiffs contend, however, that the remedy is inadequate because New Mexico "has fallen behind the recent trend in federal law." Plaintiffs' Response at 8. If the remedy is inadequate, Plaintiffs should not be required to pursue it. Moreover, Plaintiffs argue that the federal court may hear the state inverse condemnation claim.

In Estate of Sanchez v. Bernalillo County, 902 P.2d 550 (N.M. 1995), the New Mexico Supreme Court held that "[t]o constitute a taking, a regulation must

deprive a property owner of all or substantially all beneficial use of the subject property." Id. at 551 (italics omitted); but see Santa Fe Trail Ranch v. Board of County Comm'rs, 961 P.2d 785, 789 (N.M. Ct. App. 1998) (noting that it is unsettled whether deprivation must be of some or all use of property); PDR Development Corp. v. City of Santa Fe, 900 P.2d 973, 975 (N.M. Ct. App. 1995) (same). It further held that in the absence of such deprivation, a taking does not occur merely because the subject regulation is not reasonably related to a proper purpose. See Estate of Sanchez, 902 P.2d at 552-53. In City of Monterey v. Del Monte Dunes at Monterey, Ltd., 119 S. Ct. 1624 (1999), the Supreme Court determined that a jury could impose regulatory takings liability where the challenged action did not substantially advance a legitimate public purpose. See id. at 1634-45.

According to Plaintiffs, New Mexico law is inadequate to the extent "no compensation is due . . . if the taking can be characterized as 'zoning,' even if the 'zoning' did not substantially advance any legitimate government interest, and caused a substantial reduction in the value of the property." Plaintiff's Response at 8. Plaintiffs acknowledge that such a construction of state law probably is too narrow, but suggest that until the New Mexico Supreme Court clarifies the matter state law is inadequate. See id.

The court cannot agree at this point. While Estate of Sanchez may appear to be a narrower construction of what constitutes a taking than Del Monte Dunes,

cases must be read against their facts. Specifically, Del Monte Dunes involved

five years of proceedings, five formal decisions and rejection of nineteen

different site plans which led Del Monte Dunes to conclude that "the city would

not permit development of the property under any circumstances." Del Monte

Dunes, 119 S. Ct. at 1633; see also Buckles v. King County, No. 98-35270, 1999

WL 700579 (9th Cir. Sept. 10, 1999) (noting extreme circumstances of Del

Monte Dunes). In this context, the "the jury was instructed to consider whether

the city's denial of the final proposal was reasonably related to a legitimate

public purpose." Del Monte Dunes, 119 S. Ct. at 1636-37. Thus, a substantial

loss of value existed in Del Monte Dunes.

In Estate of Sanchez, the New Mexico Supreme construed the federal

takings clause and the complimentary state constitutional provisions together.

See Estate of Sanchez, 902 P.2d at 552; see also Miller v. City of Albuquerque,

554 P.2d 665, 667 (N.M. 1976). Even if Del Monte Dunes somehow changed the

federal law, nothing suggests that the New Mexico courts would not consider

such a change in construing the applicable state provisions. Plaintiffs have not

demonstrated that resort to state condemnation procedures would be futile.

Plaintiffs suggest that this court could hear the state condemnation

procedure. The Tenth Circuit has held that a federal district court sitting in

diversity may hear an inverse condemnation proceeding arising under state

constitutional and statutory law. See SK Finance SA, 126 F.3d at 1276. But this

is not a diversity case, see Amended Complaint at 3, ¶ 3, and the court declines to exercise supplemental jurisdiction over the state law claims [counts II (state law component) and count IV]. See 28 U.S.C. § 1367(c); see generally City of Chicago v. International College of Surgeons, 118 S. Ct. 523, 533-34 (1997). The court must dismiss the action for lack of subject matter jurisdiction on ripeness grounds, see Rocky Mountain Materials, 972 F.2d at 311; J.B. Ranch, Inc., 958 F.2d at 310, and remand the matter to state court.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the Motion to Dimiss filed August 20, 1999 (doc. 18), by Defendants Bernalillo County and the Board of County Commissioners of Bernalillo County, individually and in their official capacities as County Commissioners for Bernalillo County, is granted.

IT IS FURTHER ORDERED that this action is remanded to Second Judicial District, State of New Mexico, for lack of subject matter jurisdiction, see 28 U.S.C. § 1447(c).

DATED this 1st day of October, 1999 at Santa Fe, New Mexico.

Paul Kelly Jr.
United States Circuit Judge
Sitting by Designation